## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AKEEM PAGE-JONES,               :
    Plaintiff               :
                       :        No. 1:20-cv-1042
    v.                      :
                       :        (Judge Rambo)
JASON BERFIELD, *et al.*,        :
    Defendants              :

### MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment (Doc. No. 42) filed by remaining Defendants Jason Berfield ("Berfield"), Zimmerman ("Zimmerman"), J. Schneck ("Schneck"), CO Reese ("Reese"), CO Reneker ("Reneker"), Buelto ("Buelto"), CO Gilday ("Gildea")[1], CO Snyder ("Snyder"), and Laurel Harry ("Harry"). The motion is fully briefed and ripe for disposition.

## I. BACKGROUND

On June 22, 2020, *pro se* Plaintiff Akeem Page-Jones ("Plaintiff"), who is currently incarcerated at the State Correctional Institution Rockview in Bellefonte, Pennsylvania ("SCI Rockview"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Berfield, Zimmerman, Schneck,

---

[1] Defendants' filings indicate that the proper spelling of this Defendant's name is Gildea. The Court will direct the Clerk of Court to amend the docket in the above-captioned action to reflect the proper spelling.

Zachary J. Moslak ("Moslak"), Reese, Reneker, Buelto, Gilday, Snyder, Christina Srebro ("Srebro"), Scott Miller ("Miller"), Tonya L. Heist ("Heist"), Harry, and Keri Moore ("Moore").  (Doc. No. 1.)  Plaintiff also sought leave to proceed *in forma pauperis*.  (Doc. No. 4.)  In an Order dated June 24, 2020, the Court granted Plaintiff leave to proceed *in forma paupers* and directed service of his complaint upon Defendants.  (Doc. No. 6.)  On August 14, 2020, Defendants filed a motion to dismiss the complaint.  (Doc. No. 12.)  Plaintiff requested and was granted an extension of time to respond.  (Doc. Nos. 14, 15.)  In lieu of a response, however, Plaintiff filed an amended complaint.  (Doc. No. 16.)

Plaintiff's amended complaint concerns events that occurred while he was incarcerated at SCI Camp Hill.  Plaintiff alleges that on June 18, 2018, while he was housed in the Restricted Housing Unit ("RHU"), Defendants Zimmerman and Reese strip searched him prior to escorting him to the exercise area.  (*Id.* ¶ 19.)  Defendant Zimmerman told Plaintiff that he should stop filing grievances because nothing would ever change.  (*Id.*)  Defendants Zimmerman, Reese, Reneker, and Buelto ultimately searched and "trash[ed]" Plaintiff's assigned cell and confiscated his personal and legal property.  (*Id.*)  Plaintiff asked Defendant Gilday for help, but Defendant Gilday did nothing to stop the others.  Plaintiff told Defendant Zimmerman that he would be filing a grievance, and Defendant Zimmerman

2

responded that Plaintiff would "be receiving [his] paperwork soon, so enjoy your time in the RHU." (*Id.*) Plaintiff never received a Confiscated Items Receipt ("CIR"). (*Id.* ¶ 20.)

Plaintiff subsequently received a misconduct on June 19, 2018 and appeared before Defendant Schneck for a hearing on June 21, 2018. (*Id.*) Ultimately, Defendant Schneck dismissed the misconduct because of Plaintiff not being provided with the proper documentation and for failure to file a proper DC-141 Misconduct Report. (*Id.*) Later that day, Defendant Berfield came to Plaintiff's cell and told Plaintiff that he would be writing another misconduct, and that "this time it will stick." (*Id.* ¶ 21.) Three (3) hours later, Plaintiff received another misconduct, which he avers was a "rewrite of the first misconduct [he] received on" June 19, 2018. (*Id.*) An officer told Plaintiff that Defendant Berfield had said that if Plaintiff "signed off" on his grievances and gave information about who was bringing contraband into the prison, the misconduct would go away. (*Id.*) Plaintiff noted that he would not make an agreement to do so because he was not withdrawing any filed grievances. (*Id.*)

On June 22, 2018, Plaintiff submitted a grievance regarding the search of his cell and seizure of his property. (*Id.* ¶ 22.) On July 2, 2018, Plaintiff appeared before Defendant Schneck for his second misconduct hearing. (*Id.* ¶ 23.) Plaintiff

maintains that Defendant Schneck told him that he was "good friends" with Defendants Zimmerman, Reese, Reneker, Buelto, and Gilday and that Plaintiff had upset "a lot of 'good people'" by filing "frivolous grievances and harassing people with paperwork." (*Id.*)  Plaintiff refused to respond to these comments, and Defendant Schneck told Plaintiff he was finding him guilty of escape. (*Id.*)  Plaintiff asked how he could be found guilty of escape without review of the confiscated items, and Defendant Schneck noted that Plaintiff would not be in this predicament if he had not filed grievances. (*Id.*)  Defendant Schneck gave Plaintiff the maximum punishment, ninety (90) days of disciplinary confinement. (*Id.*)  Plaintiff asked why he was being retaliated against for filing grievances, but Defendant Schneck "cut him off and told him to just file[] his appeal." (*Id.*)

On July 17, 2018, Plaintiff wrote a request slip to Defendant Harry, asking to be separated from Defendants Zimmerman, Reese, Reneker, Buelto, and Berfield. (*Id.* ¶ 24.)  Defendant Harry responded, "You cannot request a separation[] from multiple staff because you're claiming they don't like you." (*Id.*)  On August 8, 2018, Plaintiff asked to speak to Defendant Snyder. (*Id.* ¶ 23.)  Plaintiff asked Defendant Snyder about the grievance he had filed, and Defendant Snyder told Plaintiff he had "some nerve calling [him] to [his] cell asking about a grievance." (*Id.*)  Defendant Snyder told Plaintiff that he should not wonder why he was being

4

retaliated against because he was sent to SCI Camp Hill for assaulting officers at another facility. (*Id.*)

Plaintiff avers that Defendant Harry retaliated against him for filing grievances by permitting a "campaign of harassment." (*Id.* ¶ 25.) Plaintiff maintains that she conspired with Defendants Zimmerman, Reese, Reneker, Buelto, and Berfield to allow the seizure of his property. (*Id.*) According to Plaintiff, Defendant Harry was aware that these Defendants were not authorized to act on June 18, 2018 because Plaintiff had written several request slips notifying her of the confiscation, yet she "refused to [e]nsure that DC-ADM policy [was] followed and Plaintiff's grievances were adequately investigated." (*Id.*)

Based on the foregoing, Plaintiff alleges that his First Amendment rights were violated because Defendants retaliated against him. (*Id.* ¶¶ 27-32.) Plaintiff also asserts a civil conspiracy claim against Defendants.[2] (*Id.* ¶¶ 33-37.) As relief, he seeks damages. (*Id.* at 8.) On November 20, 2021, Defendants filed a partial motion to dismiss the amended complaint. (Doc. No. 19.) In a Memorandum and Order dated December 18, 2020, the Court granted in part and denied in part the partial

---

[2] Plaintiff also suggests that Defendants' actions violated 18 U.S.C. §§ 241 and 242. These statutes, however, are civil rights-related conspiracy statutes for which there is no private cause of action. *See Carpenter v. Ashby*, 351 F. App'x 684, 688 (3d Cir. 2009) ("We agree with the District Court's dismissal of the 18 U.S.C. § 241 and § 242 claims. Neither statute creates a civil cause of action."). Accordingly, Plaintiff's claims pursuant to 18 U.S.C. §§ 241 and 242 will be dismissed.

5

motion to dismiss.  (Doc. Nos. 21, 22.)  Specifically, the Court granted the motion with respect to: (1) Plaintiff's claims against Defendants Srebro, Miller, Heist, Moore, and Moslak; (2) his claims against Defendant Harry arising from her involvement in the review of his grievances; (3) his claims pursuant to 18 U.S.C. §§ 241 and 242; (4) his official capacity claims; and (5) his 42 U.S.C. § 1985(3) conspiracy claim.  (Doc. No. 22.)  The Court denied the motion with respect to Plaintiff's civil conspiracy claim and noted that the above-captioned action would proceed as to that claim as well as Plaintiff's First Amendment retaliation claim against Defendants Berfield, Zimmerman, Schneck, Reese, Reneker, Buelto, Gilday, Snyder, and Harry.  (*Id.*)

Defendants filed their answer on January 4, 2020 (Doc. No. 25), and the parties subsequently engaged in discovery.  After receiving an extension of time to file dispositive motions (Doc. Nos. 40, 41), Defendants filed their motion for summary judgment and supporting materials on September 21, 2021 (Doc. Nos. 42, 43, 44).  After receiving an extension of time (Doc. Nos. 45, 46), Plaintiff filed his response on December 3, 2021 (Doc. Nos. 47, 48).  Defendants filed their reply on December 9, 2021.  (Doc. No. 49.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may

not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party

8

opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting that *pro se* parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

## III.   STATEMENT OF MATERIAL FACTS[3]

Plaintiff "was incarcerated at SCI Camp Hill when the events in his lawsuit occurred."  (Doc. No. 43 ¶ 1.)  On June 18, 2018, Plaintiff was housed in the Restricted Housing Unit ("RHU") at SCI Camp Hill.  (*Id.* ¶ 2.)  On that date, Defendants Zimmerman and Reese "strip searched him prior to him going to the exercise area."  (*Id.*)  Defendant Zimmerman told Plaintiff "to stop filing grievances because nothing would ever change as long as the Plaintiff was at SCI Camp Hill."  (*Id.* ¶ 3.)  Plaintiff had previously filed grievances against Defendant Zimmerman concerning his legal and personal property, and Defendants Zimmerman and Reese

---

[3] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  *See id.*

Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of material facts.  (Doc. No. 43.)  Plaintiff has filed a responsive concise statement of undisputed facts, but this document does not fully comply with Local Rule 56.1 because it primarily consists of legal allegations and conclusions.  Moreover, while Plaintiff indicates that some of the facts set forth by Defendants are "disputed but misleading," many of his statements contain no references to the record.  Plaintiff also has included independent facts, legal allegations, and conclusions that he believes are necessary to determine the motion for summary judgment.  Accordingly, the Court deems the facts set forth by Defendants to be undisputed.  *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2); *Coit v. Fisher*, No. 1:18-cv-2439, 2020 WL 4260762, at *2 n.3 (M.D. Pa. July 24, 2020) (citing *Lynch v. Ducasse*, No. 3:18-cv-2044, 2020 WL 3547375, at *2 (M.D. Pa. June 30, 2020)).

wanted him to "withdraw grievances about his being denied yard time on prior occasions." (*Id.* ¶ 4.)

Defendant Zimmerman "went into [Plaintiff's] cell and confiscated various items, while [Defendant] Reese handcuffed and stood next to the Plaintiff." (*Id.* ¶ 5.)  Defendants Reneker and Buelto assisted with the search. (*Id.* ¶ 6.)  Plaintiff "did not hear any conversations between them and [Defendant] Zimmerman." (*Id.* ¶ 7.)  Plaintiff had not previously filed grievances against Defendants Reneker and Buelto. (*Id.* ¶ 8.)  Moreover, Defendant Gildea "did not actually participate in the cell search." (*Id.* ¶ 9.)

As a result of the search, Defendant Berfield issued a misconduct to Plaintiff. (*Id.* ¶ 10.)  He was originally issued misconduct #D086880 for writing an escape plan, and he appeared before Defendant Schneck for a misconduct hearing. (*Id.* ¶¶ 10-11.)  "While the misconduct was originally dismissed, it was later re-written and the Plaintiff was found guilty, receiving 90 days of disciplinary custody time." (*Id.* ¶ 12.)  Plaintiff "did not deny writing the 'escape plan.'" (*Id.* ¶ 13.)  Defendant Schneck told Plaintiff "that he had upset people by filing frivolous grievances and 'harassing' individuals." (*Id.* ¶ 14.)  Plaintiff "wrote to and complained generally about 'retaliation' to Defendant Harry and Defendant Snyder." (*Id.* ¶ 15.)

11

## IV.   DISCUSSION

Defendants assert that they are entitled to summary judgment because: (1) Defendants Harry and Snyder lack personal involvement; (2) Defendant Gildea did not participate in the cell search and, alternatively, is entitled to qualified immunity; (3) Defendants Buelto and Reneker's participation in the cell search was not retaliatory; (4) Defendants Berfield and Schneck had a legitimate penological interest in sanctioning Plaintiff for writing an escape plan; (5) Plaintiff's claim against Defendants Zimmerman and Reese fails because a single cell search is not retaliatory and, alternatively, they are entitled to qualified immunity; and (6) Plaintiff has failed to demonstrate the existence of a conspiracy. (Doc. No. 44 at 2, 7-8.) The Court considers these arguments below.

### A.    Personal Involvement

Defendants Harry and Snyder maintain that they are entitled to summary judgment because they lack the requisite degree of involvement to be held liable. (Doc. No. 44 at 8-9.)   They assert that Plaintiff has produced "no evidence demonstrating that [Defendant Harry] was aware of the incidents at issue here-the cell search and the subsequent misconduct." (*Id.* at 8.)   They aver further that Defendant Snyder was not involved in the cell search and misconduct at issue. (*Id.* at 9.)   Plaintiff, however, argues that Defendants Harry and Snyder became

12

responsible for the alleged retaliation when they "failed to intervene, and or correct the [retaliatory] and adverse actions employed against [him] for the filing of his grievance against Zimmerman." (Doc. No. 47 at 5.)

To the extent Plaintiff bases his claims against Defendants Harry and Snyder on their responses to his inmate request forms and grievances, it is settled that inmates do not have a constitutional right to a grievance procedure. *See Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. *See Pressley v. Beard*, 266 F. App'x. 216, 218 (3d Cir. 2008); *Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006). Consequently, any allegations asserted by Plaintiff in an attempt to establish liability against Defendants Harry and Snyder based upon their responses or lack thereof to his grievances do not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005).

It appears that Plaintiff primarily bases his claims against Defendants Harry and Snyder on their supervisory positions at SCI Camp Hill. Supervisors, however,

"may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'"  *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of liability, the plaintiff must allege that: "(1) the existing policy or practice created an unreasonable risk of [constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

While Plaintiff suggests that Defendants Harry and Snyder failed to correct the alleged retaliatory behavior, the Supreme Court has "rejected the argument that

14

a supervising public official has an affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)).  While Plaintiff testified during his deposition that he had told Defendant Harry he "was being mistreated" (Doc. No. 43-1 at 23), he has cited no evidence suggesting that Defendants Harry and Snyder had "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents."  *See Chinchello*, 805 F.2d at 133.  Moreover, nothing in the record presents "circumstances under which [Defendants Harry and Snyder's] inaction could be found to have communicated a message of approval to the offending subordinate[s]."  *See id.*  Plaintiff also fails to provide evidence of a policy that allegedly caused the violation of his constitutional rights.[4]  *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).  The Court, therefore, will grant summary judgment to Defendants Harry and Snyder.

---

[4] Plaintiff does assert that the cell search violated the Department of Corrections ("DOC")'s Code of Ethics for its employees, as well as DC-ADM 203, the policy setting forth procedures for searches of inmates and cells.  (Doc. No. 47 at 1-2.)  Violations of DOC policies and procedures, however, are not actionable under § 1983.  *See Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (concluding that the inmate-plaintiff could not maintain a due process claim based upon "possible technical non-compliance with [a Bureau of Prisons] regulation").

15

### B.     First Amendment Retaliation Claims

An inmate stating a retaliation claim pursuant to the First Amendment bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *See id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *See id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  *See id.* at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 199 n.10 (3d Cir. 1996).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.

16

1997).  If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to

prison officials to show, by a preponderance of the evidence, that "they would have

made the same decision absent the protected conduct for reasons reasonably related

to a legitimate penological interest."  *See Rauser*, 241 F.3d at 334.  If the prison

officials can make this showing, it defeats the retaliation claim.  *See Carter v.

McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

### 1.      Protected Activity and Adverse Action

Defendants do not dispute that it is well settled that inmates engage in

protected activity when they file grievances.  *See Anderson v. Davila*, 125 F.3d 148,

161-62 (3d Cir. 1997); *see also Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir.

2011).  Thus, the Court must consider whether the alleged adverse actions set forth

above are actionable under § 1983.  To be actionable under § 1983, the adverse

action "need not be great" but "must be more than *de minimis*."  *See McKee v. Hart*,

436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted).  Moreover,

"[t]he cumulative impact of retaliatory acts may become actionable even though the

actions would be de minimis if considered in isolation."  *See Brennan v. Norton*, 350

F.3d 399, 422 n.17 (3d Cir. 2003).

Defendants assert that a single cell search "is not a sufficiently adverse

action."  (Doc. No. 44 at 18.)  They cite an unpublished Western District of

17

Pennsylvania case to support that assertion. *See Kokinda v. Pa. Dep't of Corr.*, No. 2:16-cv-5, 2016 WL 7029385, at \*4 (W.D. Pa. Oct. 31, 2016) (collecting district court cases concluding that a cell search is not an adverse action for purposes of a retaliation claim), *Report and Recommendation adopted*, 2016 WL 7031778 (W.D. Pa. Dec. 1, 2016). For the reasons set forth below, the Court is unpersuaded by Defendants' argument.

While cell searches are a routine part of prison life, *Hudson v. Palmer*, 468 U.S. 517, 526-27, it does not mean that searches that constitute "calculated harassment unrelated to prison needs" are permissible. *Id.* at 530. The Third Circuit has held, in a non-precedential opinion, that a retaliatory search and seizure may be sufficient to satisfy the adverse action prong of a retaliation clam. *See Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 124-25 (3d Cir. 2017) (citing *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002)). Likewise, the United States Court of Appeals for the Ninth Circuit has suggested that subjecting inmate to cell searches to retaliate against them for filing grievances constitutes adverse action. *See Lyons v. Dicus*, 663 F. App'x 498, 500 (9th Cir. 2016).

Moreover, Plaintiff is not basing his retaliation claim only upon the cell search. Rather, Plaintiff avers that various items of personal property were taken from his cell. This Court has noted that a cell search and resulting confiscation of

property may constitute adverse action "if motivated solely by a retaliatory motive." *Hernández-Tirado v. Lowe*, No. 3:14-cv-1897, 2017 WL 3433690, at *10 (M.D. Pa. Aug. 10, 2017). The Court finds the reasoning set forth in *Humphrey* and *Hernández-Tirado* to be persuasive and, therefore, concludes that Plaintiff has satisfied the second prong for purposes of his retaliation claim.[5]

### 2.    Causation

With respect to the third prong of a retaliation claim, while causation may be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence." *See Watson*, 834 F.3d at 422. Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *See id.*

### b.    Defendants Buelto and Reneker

Defendants Buelto and Reneker aver that they are entitled to summary judgment because "their mere participation in a cell search does not render it

---

[5] Defendants alternatively assert that, even if a single cell search is sufficient adverse action, "it was not clearly established as such, so they are entitled to qualified immunity." (Doc. No. 44 at 17.) Defendants provide no further argument in support of this assertion, and they have the burden of demonstrating that qualified immunity should apply. *See Beers-Capitol*, 256 F.3d at 142 n.15. The Court, therefore, concludes that Defendants have failed to meet their burden of demonstrating that qualified immunity should apply to find that it was not clearly established, as of June 18, 2018, that a cell search constitutes adverse action for purposes of a First Amendment retaliation claim.

retaliatory, simply because others may have had a reason or motivation to retaliate against him." (Doc. No. 44 at 12.)  In his deposition, Plaintiff admitted that he had not previously filed grievances against Defendants Buelto and Renker.  (Doc. No. 43-1 at 15.)  He also averred that Defendant Buelto told him that he "put this on [himself] for filing grievances."  (*Id.* at 16.)   However, with respect to these Defendants, there is simply no evidence that Plaintiff ever filed a grievance against them.  *See Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming the district court's grant of summary judgment in favor of a defendant on the inmate-plaintiff's claim that he was retaliated against by an individual who was not the target of his protected activity).  Thus, "[t]here is no apparent reason why [Defendants Buelto and Reneker] would want to retaliate against Plaintiff for filing [grievances] against [Defendant Zimmerman]."  *See Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009); *see also Murray v. Smithbower*, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021) (quoting *Victor v. Lawler*, 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014)) (noting that courts "have consistently rejected retaliation claims 'against one defendant based on [protected activity] against another [individual]' for lack of retaliatory motive").  Plaintiff's speculation otherwise is insufficient to defeat summary judgment. *See Wharton v. Danberg*, 854

20

F.3d 234, 244 (3d Cir. 2017).  Accordingly, the Court will grant summary judgment to Defendants Buelto and Reneker with respect to Plaintiff's retaliation claims against them.

### c.   Defendants Zimmerman and Reese

Defendants Zimmerman and Reese assert that Plaintiff's retaliation claim against them fails because "a single incident of searching the Plaintiff's cell is not retaliatory, or if it is, it was not clearly established as such."  (Doc. No. 44 at 17.)  As discussed *supra*, the Court is not persuaded by such arguments.  Defendants have not addressed the third prong of a retaliation claim as applied to Defendants Zimmerman and Reese's alleged actions.

With respect to the third prong of a retaliation claim, while causation may be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence."  *See Watson*, 834 F.3d at 422.  Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggest a causal link."  *See id.*  For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."  *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (quoting

21

*Krouse*, 126 F.3d at 503).   "Where the temporal proximity is not 'unusually suggestive,' [the Court must] ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'"   *See Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)).

During his deposition, Plaintiff testified that in June of 2018, he had filed grievances against Defendant Zimmerman regarding his failure to provide Plaintiff with his legal property.  (Doc. No. 43-1 at 9.)  On June 18, 2018, Plaintiff was strip searched by Defendants Zimmerman and Reese, but instead of being taken to the exercise area, he was handcuffed by Defendant Reese and Defendant Zimmerman entered his cell.  (*Id.* at 8, 11.)   According to Plaintiff, Defendants Reese and Zimmerman wanted him to withdraw grievances about being denied yard privileges, and Defendant Zimmerman told Plaintiff that "this will happen every time you file a grievance and refuse to withdraw it." (*Id.* at 10-12.)   Ultimately, various items were confiscated during the search.  (*Id.* at 12-15.)   Defendant Zimmerman told Plaintiff that he would receive a misconduct if he filed a grievance about the cell search. (*Id.* at 17.)  Plaintiff has reiterated these assertions in an affidavit. (Doc. No. 48-1.)   Plaintiff averments could permit a reasonable juror to conclude that Defendants Zimmerman and Reese searched Plaintiff's cell and confiscated his

22

items because of Plaintiff's conduct in filing grievances.  Such issues of fact, however, will likely turn on a credibility assessment, a task in which this Court may not partake at the summary judgment stage. *See Anderson*, 477 U.S. at 252.  The Court, therefore, will deny summary judgment as to Plaintiff's retaliation claims against Defendants Zimmerman and Reese.

### d.    Defendants Berfield and Schneck

Defendants assert that Plaintiff's retaliation claim against Defendants Berfield and Schneck fails as well.  (Doc. No. 44 at 14-17.)  They assert that Defendant "Berfield did not engage in any adverse action, but even if he had, he had a legitimate penological reason for issuing the misconduct.  Same, too, with [Defendant] Schneck, for finding the Plaintiff guilty of misconduct." (*Id.* at 14.)

Defendants assert that Plaintiff "has not established that [the] misconduct issued by [Defendant] Berfield was 'false,' as is required to show an adverse action," but they cite no law in support of this proposition.  (Doc. No. 44 at 15.)  However, the Third Circuit has noted that "being issued misconduct charges" constitutes "more than '*de minimis*' adverse action[]." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (citing *McKee*, 436 F.3d at 170).  Nevertheless, the record before the Court establishes that Defendants Berfield and Schneck "would have made the

23

same decision absent the protected conduct for reasons related to a legitimate penological interest." *See Rauser*, 241 F.3d at 334.

The record reflects that on June 19, 2018, Defendant Berfield issued a misconduct charging Plaintiff with escape because documents were recovered from his cell search "that described planning an escape attempt at various areas in 'the Burgh.'" (Doc. No. 48-2 at 1.) The documents went on "to describe how and where the escape would occur and how it would be facilitated." (*Id.*) The first misconduct was dismissed, and Defendant Berfield rewrote the misconduct to indicate that the documents described a "planned escape from hospitals involving many individuals," and that they included "codes and instructions on using the code to communicate." (Doc. No. 1 at 17.) Defendant Schneck found Plaintiff guilty of the misconduct. (*Id.* at 19.)

During his misconduct hearing, Plaintiff "never dispute[d] authorizing the document but claimed it was [a] skit/scene for a book he was planning to write." (*Id.*) During his deposition, Plaintiff testified that it was "a transcript to an urban fiction novel that [he] was creating while [he] was in the RHU at Camp Hill." (Doc. No. 43-1 at 24.) Plaintiff avers that he "[could] see how it was made to be out what it is," but that it was "not anything about trying to escape from anywhere." (*Id.* at 25.) Officials, however, have a legitimate penological interest in preventing inmates

24

from possessing items that set forth possible escape plans. *See Pfender v. Sec'y Pa. Dep't of Corr.*, 443 F. App'x 749, 753 (3d Cir. 2011); *see also Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2002). Upon review of the record, the Court concludes that there is a sufficient "quantum of evidence" to conclude that Defendants Berfield and Schneck's actions were reasonably related to legitimate penological interests and that Plaintiff would have been found guilty of the misconduct regardless of his protected activity. *See Carter*, 292 F.3d at 159. The Court, therefore, will grant summary judgment to Defendants Berfield and Schneck with respect to Plaintiff's First Amendment retaliation claim.[6]

### B. Claim Against Defendant Gildea

Defendant Gildea asserts that he is entitled to summary judgment because he did not participate in the cell search. (Doc. No. 44 at 10.) Alternatively, he argues

---

[6] Plaintiff's amended complaint could also be construed as asserting a retaliatory due process claim against Defendants Berfield and Schneck. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (noting that "[p]rison disciplinary proceedings may . . . constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right"). Such a claim requires threshold proof that the inmate was engaged in constitutionally protected conduct. *See id.* (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). However, due process is satisfied where the plaintiff has an opportunity to confront and challenge the retaliatory misconduct reports. *See Smith*, 293 F.3d at 654-54; *see also Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012). Moreover, a retaliatory discipline claim fails where there is "some evidence" to support the determination. *See Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010) (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). As discussed *supra*, some evidence supported the decision to issue the misconduct and find Plaintiff guilty. Moreover, the record indicates that Plaintiff received an opportunity to challenge the misconduct. Thus, any retaliatory due process claim against Defendants Berfield and Schneck fails as well.

that he is entitled to summary judgment.  (*Id.*)  The record reflects that Plaintiff attempted to complain about the cell search to Defendant Gildea but was initially unable to do so.  (Doc. No. 43-1 at 12-13.)  A few minutes later, Plaintiff was able to speak to Defendant Gildea.  (*Id.* at 16.)  Defendant Gildea went into Plaintiff's cell and "had a brief conversation [that Plaintiff] could not hear."  (*Id.* at 17.)  He then "came back out and let [Plaintiff] know that [he] put it on [himself] and everything like that, and then simply walked away."  (*Id.*)  It appears that Plaintiff seeks to hold Defendant Gildea liable for failing to intervene and stop the alleged retaliation.  Defendant Gildea asserts that he is entitled to qualified immunity for such a claim.  (Doc. No. 44 at 10-12.)

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *See Schmidt v. Creedon*, 639 F.3d 587, 598 (3d Cir. 2011).  "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled

to qualified immunity." *Id.* Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *See al-Kidd*, 563 U.S. at 741. As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *See Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)).

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014). To make the determination regarding whether a right is clearly established, the Court "look[s] first for applicable Supreme Court precedent." *See Mammaro*, 814 F.3d at 169. "Even if none exists, it may be possible that a 'robust consensus of cases of persuasive authority' in the Court of Appeals could clearly establish a right for purposes of qualified immunity." *Id.*

27

(quoting *Taylor v. Barkes*, 575 U.S. 822, 826 (2015)).  "[C]learly established law should not be defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted).  Thus, "[a] rule is too general if the unlawfulness of the [official's] conduct does not follow immediately from the conclusion that the rule was firmly established." *Wesby*, 138 S. Ct. at 590.

The Third Circuit recently considered a similar failure to intervene claim in the context of qualified immunity.  Specifically, the Third Circuit considered whether qualified immunity applied to a claim that a defendant failed to intervene to stop investigatory police conduct that allegedly violated the plaintiff's constitutional rights.  *See generally Weimer v. Cty. of Fayette*, 972 F.3d 177 (3d Cir. 2020).  The *Weimer* court stated:

> It is well established in our Circuit that both police and corrections officers must "take reasonable steps to protect a victim from another officer's use of excessive force." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002); *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1193-94 (3d Cir. 1995).  But we have not extended this duty to prosecutors who fail to intervene to prevent police from conducting unconstitutional investigations.  Accordingly, we cannot say that "any reasonable [prosecutor]" investigating [the victim's] murder would have understood that she was violating Weimer's constitutional rights in failing to intervene to prevent improper investigatory conduct by police. *See Plumhoff*, 572 U.S. at 778-79.  Put differently, the facts here are simply too dissimilar from those in the excessive force cases for us to hold that those cases would have put [the defendant prosecutor] on notice that her actions were unlawful.

*Weimer*, 972 F.3d at 191.  The Court concluded that there was no clearly established law at the time of the alleged conduct that "would have placed the constitutional question . . . confronted . . . 'beyond debate.'"  *Id.* at 192 (quoting *Plumhoff*, 572 U.S. at 779).  Further research indicates that the Western District of Pennsylvania, relying upon *Weimer*, recently concluded that qualified immunity applied to an inmate-plaintiff's claim that a corrections officer failed to intervene and stop another officer's alleged retaliatory conduct against him.  *See Armstrong v. Furman*, No. 3:19-cv-141, 2020 WL 5545270, at *6-7 (W.D. Pa. Sept. 16, 2020).[7]

The Court has not located a "robust consensus of cases of persuasive authority" to conclude that Plaintiff had a clearly established right to hold Defendant Gildea liable for failing to intervene in the alleged retaliatory conduct.  *See Mammaro*, 814 F.3d at 169 (quoting *Taylor*, 575 U.S. at 826).  Rather, given *Weimar* and its application by the Western District of Pennsylvania in *Armstrong*, the Court concludes otherwise—that such a right was not clearly established as of June 18, 2018.  The Court, therefore, concludes that Defendant Gildea is entitled to qualified

---

[7] The District of New Jersey has also relied upon *Weimer* to conclude that an inmate-plaintiff could not maintain a claim that corrections officers "each failed to intervene to stop the other from delaying Plaintiff's medical treatment," concluding that "failure-to-intervene or failure-to-protect claims arise as a corollary to the use of excessive force or some other form of violence."  *Conte v. Goodwin*, No. 19-8333, 2021 WL 141337, at *5 (D.N.J. Jan. 15, 2021).

immunity, and will grant Defendants' motion for summary judgment with respect to Plaintiff's claim against him.

### C.    Civil Conspiracy Claim

Plaintiff also avers that Defendants conspired to violate his civil rights. To maintain an action for civil conspiracy under § 1983, a plaintiff must "prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). "This requires that the state actors took 'concerted action' based on an 'agreement' to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights." *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (citing *Jutrowski*, 904 F.3d at 295). To survive summary judgment, a plaintiff cannot rely on subjective suspicions and unsupported speculation. *See Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991); *see also Payne v. Gordon*, 3:17-cv-1230, 2018 WL 3649026, at *11 (M.D. Pa. Aug. 1, 2018) (noting that "to successfully counter a motion for summary judgment, a plaintiff must provide specific evidence establishing that defendants agreed among themselves to act against him either unlawfully or for an unlawful purpose"); *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992) (noting that "[b]are

conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.").

In his brief in opposition, Plaintiff avers that "all the facts surrounding the circumstance of the incident establishes that there was clearly a [c]onspiracy to [r]etaliate" against him.  (Doc. No. 47 at 4.)  He asserts that he "has outlined and established the existence of a [c]ivil [c]onspiracy employed and exercised by all [D]efendants involved."  (*Id.* at 6.)  Plaintiff, however, has failed to introduce into the record any evidence which shows an agreement or plan created and executed by Defendants that rises to the level of a conspiracy.   Without such, Plaintiff's conspiracy claims amount to nothing more than mere conjecture and bare speculation, which is not sufficient to demonstrate a genuine issue of fact as to the existence of an agreement designed to deny his constitutional rights. *See Young*, 926 F.2d at 1405 n.16.  Accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's conspiracy claim.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 42) will be granted in part and denied in part.  The motion will be granted with

respect to: (1) Plaintiff's claims against Defendants Harry, Snyder, and Gildea; (2) Plaintiff's First Amendment retaliation claims against Defendants Berfield, Schneck, Reneker, and Buelto; and (3) Plaintiff's civil conspiracy claim.   The motion will be denied with respect to Plaintiff's First Amendment retaliation claims against Defendants Zimmerman and Reese.   An appropriate Order follows.


s/ Sylvia H. Rambo
United States District Judge

Date: December 14, 2021

32